UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UPPER LAKE POMO ASSOCIATION, et al., <br><br>Plaintiffs, <br><br>v. <br><br>ROGERS C B MORTON, et al., <br><br>Defendants. | Case No. 75-cv-00181-PJH <br><br>**ORDER DENYING MOTION TO HOLD DEFENDANTS IN CONTEMPT AND MOTION TO INTERVENE** <br><br>Re: Dkt. Nos. 320, 324 |

Jessica Jackson's motion to hold defendants in contempt and April Diwald's motion to intervene came on for hearing before this court on August 15, 2018. Jackson appeared through her counsel, Lester Marston. Diwald appeared through her counsel, Jack Duran. The government defendants appeared through their counsel, Michael Pyle. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES Jackson's motion and DENIES Diwald's motion, for the reasons stated at the hearing as summarized below.

**BACKGROUND**

In the early years of the 20th century, the United States government established eighty "Rancherias," mostly in isolated rural areas of Northern California, for "homeless" members of California Indian tribes. The Rancheria lands were held in trust by the United States for the benefit of the various tribes. The Upper Lake Rancheria, located several miles north of Clear Lake, in Lake County, California, was established in 1907 for the Upper Lake Pomo Tribe, the land held in trust for homeless or landless Pomo Indians

in Lake County.

In 1958, pursuant to the California Rancheria Act, forty-one of the tribes, including the Pomo Indian Tribe, agreed to have their trust relationship to the United States terminated, and to have the assets of the Rancherias distributed to the individual members of the respective tribes. The government promised the tribes that if they disbanded, the land would be deeded to the individual members, and that the government would make improvements such as installing water and sewer systems and paving roads.

The Secretary of the Interior (the "Secretary") gave final approval to the distribution plan for the Upper Lake Rancheria in January 1960. However, the government failed to provide the promised improvements, and much of the land was subsequently lost to tax liens and unpaid mortgages.

In 1975, the Upper Lake Pomo Association and several individual members of the Association filed the above-entitled action against the United States, seeking reinstatement for the Upper Lake Band of Pomo Indians as a sovereign nation. On March 1, 1979, the parties agreed pursuant to stipulation that plaintiffs were entitled to partial judgment as a matter of law.

On May 15, 1979, the court granted plaintiffs' motion for summary judgment, finding that the failure of the United States to perform its duties and obligations with regard to the Upper Lake Rancheria land constituted a material breach of the Rancheria Act. See Findings of Fact, Conclusions of Law and Order Granting Plaintiffs' Motion for Partial Summary Judgment, May 15, 1979 (the "1979 Order"). The court ruled that plaintiffs were entitled to equitable relief restoring the exterior boundaries of said Rancheria to the status quo prior to the distribution of the assets thereof and, at their option, voiding some or all of the executed portions of the plan for distribution of the assets of the Upper Lake Rancheria, as well as restoring to trust status interests in trust allotments which were fee-patented to persons included in the Upper Lake distribution plan or termination proclamation (insofar as may be done without affecting either the

vested beneficial rights acquired under the distribution plan or any vested rights of third party bona fide purchasers for value) and restoring all rights and benefits accruing to plaintiffs as Indians under the laws of the United States.

On August 31, 1983, the court entered a final judgment on the claims for declaratory and injunctive relief. The judgment provided, in part:

> i. The Secretary of the Interior is under a continuing obligation to restore to trust status lands of the Upper Lake Rancheria and fee interests in trust or former trust allotments issued to persons listed in the plan for distribution of the assets of the Upper Lake Rancheria by reason of the purported termination of such Rancheria, whenever possible. Restoration of trust status shall be accomplished as follows:
>
> . . . .
>
> (2) Within one year of receipt of actual notice of the terms of the judgment, each Indian or Indian organization of the Upper Lake Rancheria who has or retains any interest in or to the lands or assets of the Rancheria (however acquired) shall be entitled to convey his or her interest to the United States, to be held in trust for the benefit of such Indian member(s) of the Upper Lake Rancheria . . . . ;
>
> **(3) Before accepting any instrument of conveyance which has the effect of restoring trust status to lands within the Rancheria, the Secretary of the Interior shall be entitled to approve or reject such instrument as to form . . . . ;**
>
> (4) Upon acceptance of any instrument or instruments conveying title to lands within or without the Rancheria to the United States pursuant to this judgment, the Secretary of the Interior or his designee shall promptly record said instruments with the County Recorder of the County in which such lands are located;
>
> (5) The time limit for restoring trust status to lands of the Rancheria may be modified by the Court by application of any party to this action showing good cause for such action;

Order and Final Judgment on Claims for Declaratory and Injunctive Relief, August 17, 1983 (the "1983 Order," together with the 1979 Order, the "Orders"), at 4–7 (emphasis added).

The judgment also provided that "[t]his court will retain jurisdiction over this action

for the purpose of granting such supplemental relief as is or may become necessary or proper for the purpose of implementing the provisions of this judgment." Id. at 8.

Amerdine Snow McCloud (also known as Amerdine Jackson) was an original distributee for the distribution of the assets of the Rancheria and was eligible under the court's Orders to have her property located on the Rancheria (the "Parcel" or "Parcel 5"), which she owned in fee, restored to trust status. See 1979 Order at 2 (listing "Armadine" Jackson).

McCloud died on February 4, 2001. Dkt 320-1, Jackson Decl. ¶ 12. On September 24, 2013, the Lake County Superior Court, during a probate hearing on McCloud's estate, found that it did not have jurisdiction to determine the ownership status of the Parcel—whether it was in the estate or held in trust by the government.

On March 15, 2016, April Diwald filed a complaint for declaratory relief in the Northern District of California, Eureka Division, Case No. 16-cv-01281-RMI, requesting declaratory relief determining whether the Parcel was in trust with the United States. That action remains pending. Jackson thereafter moved for a finding of contempt in this action against the United States for failing to place the Parcel into trust with the United States. Diwald then moved to intervene in this action.

**DISCUSSION**

This dispute raises the issue of whether McCloud conveyed Parcel 5 to the government before her death and whether the government accepted any such conveyance, thereby restoring the Parcel to trust status.

Two of McCloud's daughters, Jackson and Diwald, contest that question. Jackson filed the motion for contempt without first seeking to intervene, although she is not a named party. Diwald moved this court for permission to intervene in the action in order to oppose Jackson's motion. The court hereby DENIES Diwald's motion, as it is unnecessary. Either both of McCloud's daughters have standing to address these issues, or neither does. The court assumes without deciding that the heirs of McCloud, who was an original distributee for the distribution of the assets of the Rancheria, have a

4

sufficient concrete interest in Parcel 5 to warrant a hearing on their disputed claims. The court will hear from all interested parties.

It is undisputed that McCloud made attempts to restore the Parcel to trust status a number of times before her death. The papers submitted to this court detail an extensive history of McCloud's efforts, each of which ultimately did not successfully restore the Parcel to trust status with the government. Although the court recognizes that McCloud attempted to convey the Parcel to be held in trust by the government, the government had reason to refuse each attempted conveyance. The Orders which Jackson seeks to enforce clearly afford the Secretary of the Interior the discretion to approve or reject such conveyances. Because the Orders in this case provide that restoration of land to the trust would only be accomplished after the Secretary of the Interior accepted a conveyance, and the Secretary never accepted any of McCloud's attempted conveyances, the court finds that the Parcel was never restored to trust status with the government. See 1979 Order at 15–17; 1983 Order at 4–7. Accordingly, McCloud owned the parcel in fee simple when she died in 2001. As such, the Parcel became part of her estate. Jackson's motion therefore seeks an order from this court removing the Parcel from the probate court's jurisdiction and requiring that the government now take ownership of it in trust. However, the probate exception to this court's jurisdiction precludes precisely what Jackson requests—seizing and controlling property that is in the possession of a state court. See Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1251 (9th Cir. 2017) (citing Marshall v. Marshall, 547 U.S. 293, 311 (2006)).

Finally, the court notes that the government has represented repeatedly that, notwithstanding the one-year limitation provided by the 1983 Order, it will accept the Parcel into trust if petitioned to do so by its owners, once the state identifies the true owners. This court will hold the government to that promise.

**CONCLUSION**

For the reasons stated above, this court finds that the Parcel is not currently held

5

in trust by the United States. Jackson's motion for contempt is DENIED. Diwald's motion to intervene is DENIED as is her request to file a motion to dismiss.

**IT IS SO ORDERED.**

Dated: August 17, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge